**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CRIMINAL ACTION |
| v. ) | |
| ) | No. 09-20096-01-KHV |
| RUDY PEREZ, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**MEMORANDUM AND ORDER**

On July 15, 2009, a grand jury charged defendant with possession of a firearm which was not registered to him in violation of 26 U.S.C. §§ 5841, 5861(d) and 5871. This matter is before the Court on defendant's Motion To Suppress Evidence (Doc. #13) filed November 20, 2009. On January 12, 2010, the Court held a hearing on the motion. For reasons stated below, the Court sustains the motion.

**Factual Background**

Based on testimony and exhibits received at the hearing, the Court finds the following facts:

During the evening of March 31, 2007, law enforcement personnel responded to a report of a gang-related fight and shooting at a gas station at 7th and Kansas Avenues in Kansas City, Kansas. When officers arrived, the individuals involved in the altercation – including any victims – had fled. Patrick Locke, a patrol officer in the Kansas City, Kansas Police Department, reviewed video surveillance of the incident from the gas station's video recording system. He determined that approximately eight to ten individuals were involved in the incident, that a shot was fired and that the individuals – including two Hispanic males with shaved heads and goatees – left in three different vehicles. The two Hispanic males departed in a maroon Ford Mustang with a black rag top.

Officer Locke could not ascertain which of the eight to ten individuals had fired a weapon, but he discovered a nine millimeter spent shell casing in the parking lot.

At 11:05 p.m. on April 1, 2007 – the day after the shooting incident – Officer Locke saw a car fail to make a complete stop at a stop sign near 40th and Metropolitan Avenues in Kansas City, Kansas. When the car went past his patrol car, Officer Locke noticed that the car was a maroon Ford Mustang with a black rag top and that two Hispanic males with shaved heads were in the car. Officer Locke turned around and activated his emergency lights. The red Mustang stopped. Officer Jesse Crawford also arrived on the scene and his dash camera recorded the portion of the traffic stop on the driver side of the vehicle.[1] In addition, a Kansas Highway Patrol helicopter responded and provided additional lighting for the traffic stop.

At 11:07:02 p.m., Officer Locke approached the driver's side of the vehicle while Officer Crawford approached the passenger side. Both officers had their firearms drawn. After Officer Locke saw the hands of the driver (defendant) and the passenger (his brother), he placed his firearm back in his holster. Officer Locke asked defendant for his license and registration. Defendant quickly produced the documents and Officer Locke placed them on the roof of the vehicle. Officer Locke told defendant to get out of his vehicle so that he could search defendant. At 11:07:22 p.m., defendant placed his hands on the roof of the vehicle and Officer Locke conducted a pat-down frisk for weapons. Officer Locke did not discover any weapons on defendant. After Officer Locke concluded the pat-down for weapons, he felt further around defendant's right rear pocket and put his hand inside the pocket. Officer Locke asked defendant about the object in the pocket. Defendant responded that it was a bullet. At 11:07:44 p.m., Officer Locke placed defendant in handcuffs.

---

[1] Detective Todd Shoemaker also arrived shortly thereafter to provide support.

Officer Locke thought that he had probable cause to believe that the bullet in defendant's pocket was related to the shooting on the previous day. At 11:08:07 p.m., Officer Locke reached into defendant's pocket and retrieved a nine millimeter shell casing which was a live round of ammunition. Officer Locke believed that the shell casing matched the one which he found at the gas station the night before. Officer Locke placed the bullet on the trunk of the vehicle, then continued to search defendant's pockets.[2]

At 11:08:38 p.m., Officer Locke escorted defendant to the rear of the Mustang. Officer Locke testified that even though he had not yet arrested defendant, he was detaining defendant for further investigation. Officer Locke explained to defendant that he was investigating a shooting incident. Officer Locke asked defendant if he had anything illegal in the car. Defendant responded that he did not. Officer Locke then asked defendant for permission to search the car for guns and drugs. Approximately one minute after Officer Locke took defendant to the rear of the vehicle, defendant consented to a search. Officer Locke did not threaten defendant and he did not promise defendant anything in return for his consent to search.

During the search of the trunk of defendant's vehicle, Officer Locke discovered a nine millimeter handgun and a sawed off shotgun wrapped in a blanket, along with several nine millimeter cartridges. Defendant told Officer Locke that he used the guns for protection and that he did not want his brother to get in trouble for the guns.

---

[2] During Officer Locke's encounter with defendant, Officer Crawford conducted a Terry frisk of defendant's brother and discovered an illegal butterfly knife. Officer Crawford handcuffed him and placed him in a police vehicle.

**Analysis**

**I.      Traffic Stop**

The Fourth Amendment of the United States Constitution protects persons and their houses, papers and effects against unreasonable searches and seizures. See U.S. Const. amend. IV. The Tenth Circuit has defined three categories of police/citizen encounters: (1) voluntary cooperation in response to non-coercive questioning; (2) investigatory; and (3) arrest. United States v. Muldrow, 19 F.3d 1332, 1335 (10th Cir.) (citing United States v. Cooper, 733 F.2d 1360, 1363 (10th Cir.), cert. denied, 467 U.S. 1255 (1984)), cert. denied, 513 U.S. 862 (1994); see Terry v. Ohio, 392 U.S. 1 (1968). This case involves the second category: an investigatory or Terry stop. See United States v. Bradford, 423 F.3d 1149, 1156 (10th Cir. 2005) (traffic stops are seizures analogous to investigative detentions).

A traffic stop constitutes a seizure for purposes of the Fourth Amendment "even though the purpose of the stop is limited and the resulting detention quite brief." Brendlin v. California, 551 U.S 249, 255 (2007) (quoting Delaware v. Prouse, 440 U.S. 648, 653 (1979)). In deciding whether an investigatory detention is permissible, the Court must determine both "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." Terry, 392 U.S. at 20. Law enforcement officers may stop and briefly detain a person for investigative reasons if the officer has a reasonable suspicion that criminal activity may be afoot. United States v. Sokolow, 490 U.S. 1, 7 (1989). Reasonable suspicion requires a "particularized and objective basis for suspecting the particular person stopped of criminal activity." United States v. Cortez, 449 U.S. 411, 417-18 (1981). After an officer resolves the concern that justified the initial stop, any further detention must be supported

by a reasonable suspicion of criminal activity. See United States v. Alarcon-Gonzalez, 73 F.3d 289, 292-93 (10th Cir. 1996). Thus, "reasonable suspicion must exist at all stages of the detention, although it need not be based on the same facts throughout." United States v. Soto-Cervantes, 138 F.3d 1319, 1322 (10th Cir.), cert. denied, 525 U.S. 853 (1998). "Specific and articulable facts" are necessary to support a finding of reasonable suspicion; an inchoate and unparticularized suspicion or hunch is inadequate. Terry, 392 U.S. at 21. In determining whether reasonable suspicion existed, the Court considers the totality of the circumstances, Sokolow, 490 U.S. at 8, including the collective knowledge of those officers involved in the investigation, United States v. Hinojos, 107 F.3d 765, 768 (10th Cir. 1997). The Court evaluates the officers' conduct "in light of common sense and ordinary human experience," deferring to "the ability of a trained law enforcement officer to distinguish between innocent and suspicious actions." United States v. Stephenson, 452 F.3d 1173, 1176 (10th Cir. 2006) (internal quotation marks and citations omitted). The government bears the burden of proving the reasonableness of the officers' suspicion. United States v. Salzano, 158 F.3d 1107, 1111 (10th Cir. 1998); see also United States v. Lutz, 207 F. Supp.2d 1247, 1255 (D. Kan. 2002) (government must show traffic stop justified by reasonable articulable suspicion of illegal activity).

The decision to stop an automobile is reasonable where law enforcement officers have probable cause to believe that a traffic violation has occurred. Whren v. United States, 517 U.S. 806, 810 (1996); Delaware v. Prouse, 440 U.S. 648, 659 (1979); see United States v. Botero-Ospina, 71 F.3d 783, 787 (10th Cir. 1995) (traffic stop is valid if it is based on observed traffic violation), cert. denied, 518 U.S. 1007 (1996). Here, Officer Locke stopped the vehicle because he saw a traffic

violation.[3] Officer Locke therefore had reasonable suspicion or probable cause to stop defendant's vehicle.

## II.     Investigatory Detention Related To Shooting At Gas Station

After Officer Locke placed defendant's driver's license and registration on the roof of the vehicle, he could not detain defendant for unrelated questioning unless he had an objectively reasonable and articulable suspicion illegal activity had occurred or was occurring. United States v. Hunnicutt, 135 F.3d 1345, 1349 (10th Cir. 1998); Alarcon-Gonzalez, 73 F.3d at 292-93; United States v. Soto, 988 F.2d 1548, 1554 (10th Cir. 1993).  Officer Locke had reasonable suspicion that defendant and/or his brother were involved in criminal activity in light of the following facts:

1. Defendant's vehicle matched the description of the vehicle involved in the shooting incident the previous night; and

2. The appearance of defendant and his brother matched the appearance of the two individuals who left in the Ford Mustang from the parking lot the previous night (that is, Hispanic males with shaved heads and goatees).[4]

Even though the activities of the individuals on the video may have been ambiguous and susceptible of innocent explanation, officers may detain individuals to resolve the ambiguity. Illinois v. Wardlow, 528 U.S. 119, 126 (2000) (Terry accepts risk that officers may stop innocent people); see

---

[3] After an officer observes a traffic violation, his subjective motivations for stopping the vehicle or conducting a stop are not relevant to the Fourth Amendment inquiry. See United States v. Rubalcava-Roacho, No. 07-3362, 2008 WL 4874186, at *3 (10th Cir. Nov. 12, 2008) (after officer observes traffic violation, subjective motivations for following vehicle or conducting stop have no bearing on Fourth Amendment reasonableness inquiry), cert. denied, 129 S. Ct. 1649 (2009); United States v. Cervine, 347 F.3d 865, 870 (10th Cir. 2003) (traffic violation provided troopers reasonable suspicion to stop car; other motivations not relevant to inquiry); see also Whren, 517 U.S. at 813 (subjective intentions play no role in ordinary probable cause analysis).

[4] The government argues that defendant appeared nervous during the stop, but Officer Locke did not testify in this regard.

United States v. Arvizu, 534 U.S. 266, 277 (2002) (reasonable suspicion need not rule out possibility of innocent conduct). Based on the totality of the circumstances, officers had an objectively reasonable and articulable suspicion that defendant and his brother were involved in criminal activity and they were justified in detaining defendant and his brother for questioning. See Soto, 988 F.2d at 1554.

**III.    Terry Frisk For Weapons And Discovery Of Bullet**

During an investigative detention, police officers are authorized to take reasonable steps necessary to secure their safety and maintain the status quo. United States v. Garcia, 459 F.3d 1059, 1063 (10th Cir. 2006); United States v. Gama-Bastidas, 142 F.3d 1233, 1240 (10th Cir. 1998). In some circumstances, these safety measures may include a pat-down search for weapons. Garcia, 459 F.3d at 1063 (citing Terry, 392 U.S. at 21-24). Because the purpose of the limited pat-down search is not to discover evidence of a crime, but to allow the officer to pursue his investigation without fear of violence, a Terry frisk is only valid if it is confined to a search for weapons. Garcia, 459 F.3d at 1063; United States v. Manjarrez, 348 F.3d 881, 886-87 (10th Cir. 2003), cert. denied, 541 U.S. 911 (2004). Moreover, because the sole justification of the search is to protect the police officer and others nearby, it must therefore be confined in scope to an intrusion reasonably designed to discover "guns, knives, clubs, or other hidden instruments for the assault of the police officer." United States v. Harris, 313 F.3d 1228, 1234 (10th Cir. 2002), cert. denied, 537 U.S. 1244 (2003). An officer need not be absolutely certain that an individual is armed before taking protective measures such as a pat-down search, but he must harbor an articulable and reasonable suspicion that the person is armed and dangerous. Garcia, 459 F.3d at 1063; United States v. Hishaw, 235 F.3d 565, 570 (10th Cir. 2000); United States v. Davis, 94 F.3d 1465, 1468 (10th Cir. 1996).

Here, because defendant and his brother looked like the two individuals present at the gas stations shooting, Officer Locke had an articulable and reasonable suspicion that defendant and/or his brother were armed. See Garcia, 459 F.3d at 1066 (officer had reasonable suspicion suspect was armed and dangerous in part based on apparent gang connection). Officer Locke's pat-down frisk for weapons therefore was valid under Terry.

After Officer Locke concluded his pat-down frisk for weapons, he continued to pat defendant's right rear pocket and slide his hand in that area to try to identify a small object in defendant's pocket. Officer Locke asked defendant to identify the object and defendant responded that it was a bullet. Officer Locke then placed defendant in handcuffs. Officer Locke reached into defendant's pocket and retrieved a nine millimeter shell casing which was a live round of ammunition.

A police officer may seize non-threatening contraband detected during a protective pat-down search if he feels an object whose contour and mass make its identity immediately apparent.[5]

---

[5] Even though bullets by themselves are not weapons, courts have held that it is reasonable for an officer to retain bullets during a Terry pat down search. See United States v. Scott, 72 F.3d 139, 1995 WL 749775, at *2 (10th Cir. Dec. 19, 1995) (officer justified in seizing bullets during pat down because of safety ramifications in allowing defendant to retain ammunition); United States v. Ward, 23 F.3d 1303 (8th Cir. 1994) (officer merely frisked defendant's outer clothing until he felt cylindrical objects which he believed were shotgun shells; officer justified in reaching into pocket to retrieve shells); Scott v. State, 877 P.2d 503, 509 (Nev. 1994) (during justified stop and frisk, officer conducting frisk felt shotgun shells in suspect's pocket; reasonable for officer, as precautionary measure, to retrieve and separate weapons or ammunition from suspect during course of Terry stop and frisk); People v. Lewis, 507 N.Y.S.2d 80, 81 (1986) (ammunition recovered during frisk properly admitted into evidence at trial because officer had reasonable basis to believe defendant might be armed was properly admitted into evidence at trial), appeal denied, 506 N.E.2d 548 (1987); State v. Moton, 733 S.W.2d 449, 451 (Mo. Ct. App. 1986) (where pat-down search of suspect held reasonable to protect officer safety, admission of 13 bullets recovered by search also proper); Arizona v. Smith, 665 P.2d 995, 998 (Ariz. 1983) (because police radio call told officers they might confront shotgun, search and seizure of shotgun shells justified under Terry). Here,
(continued...)

Minnesota v. Dickerson, 508 U.S. 366, 373, 376 (1993). This exception does not apply here for two reasons. First, Officer Locke did not ask about or retrieve the bullet until after he completed his pat-down search for weapons. Second, from a review of the video and his testimony, Officer Locke did not immediately recognize the item as a bullet. Indeed, he patted the area several times, started to manipulate the object and asked defendant to identify it. In Dickerson, an officer determined that a lump in defendant's pants pocket was crack cocaine only after "squeezing, sliding and otherwise manipulating the contents of the defendant's pocket" – which he already knew contained no weapon. Id. at 378. Because the officer continued to explore defendant's pocket after concluding that it contained no weapon, the Supreme Court held that the officer had overstepped the bounds of the strictly circumscribed search for weapons under Terry. Id. Likewise, after Officer Locke determined that defendant had no weapons on his person, he continued to pat and slide his hand on or near defendant's right pants pocket in an attempt to identify the object. Because Officer Locker's search of defendant went beyond a search of weapons under Terry, Officer Locke illegally seized the nine millimeter bullet from defendant's pocket.

**IV.    Search Of Defendant's Vehicle**

Because Officer Locke illegally obtained the bullet from defendant's pocket, the Court next determines whether his search of defendant's vehicle was lawful. The search of defendant's vehicle may be upheld if (1) defendant's consent was valid or (2) independent of the bullet from defendant's pocket, Officer Locke had probable cause to believe that the vehicle contained contraband or evidence of a crime.

---

[5](...continued)
however, Officer Locke discovered the bullet *after* he completed his pat-down search for weapons.

A.  Consent

Defendant argues that he did not voluntarily consent to the vehicle search because he was already under arrest. The government bears the burden to show that defendant's consent was voluntary. See United States v. Sanchez, 89 F.3d 715, 718 (10th Cir. 1996). To establish that defendant's consent was voluntary, the government must (1) proffer clear and positive testimony that consent was unequivocal and specific and freely and intelligently given and (2) prove that consent was given without implied or express duress or coercion. Id. at 719 (quoting United States v. McRae, 81 F.3d 1528, 1537 (10th Cir. 1996)). Consent to search may be voluntary even though the consenting party is being detained when consent is given. United States v. Doyle, 129 F.3d 1372, 1377 (10th Cir. 1997). Whether consent is voluntary is a question of fact to be determined from the totality of the circumstances. See Soto, 988 F.2d at 1557. Relevant factors include (1) the number of officers present; (2) whether the officer displayed his weapon; (3) prolonged retention of a person's personal effects such as identification; (4) the length of the stop; (5) physical touching by an officer; (6) use of aggressive language or tone of voice indicating that compliance with an officer's request is compulsory; (7) promises, inducements, deception or trickery; (8) physical and mental condition and capacity of defendant; (9) the officer's failure to warn a person when the encounter is over; (10) whether the officer administered a Miranda warning; (11) a request to accompany the officer to the station; (12) the officer's failure to advise the defendant that he is free to leave; (13) the officer's failure to warn a person that he or she does not have to consent to a search and (14) whether the stop occurred in a public location. United States v. Guerrero, 472 F.3d 784, 790 (10th Cir. 2006); United States v. Ledesma, 447 F.3d 1307 (10th Cir. 2006); United States v. Sawyer, 441 F.3d 890, 895 (10th Cir. 2006); United States v. Rosborough, 366 F.3d 1145 (10th Cir. 2004); United States v. Zubia-Melendez, 263 F.3d 1155, 1163 (10th Cir. 2001); United States v.

Hill, 199 F.3d 1143, 1148 (10th Cir. 1999) (in context of consensual encounter); United States v. Hernandez, 93 F.3d 1493, 1500 (10th Cir. 1996); see Soto, 988 F.2d at 1557-58 (evaluating similar factors in context of investigative detention). No one factor is dispositive. See Soto, 988 F.2d at 1557.

Whether an individual has voluntarily consented to a search is a question of fact that the Court must evaluate under the totality of the circumstances. Ohio v. Robinette, 519 U.S. 33, 39-40 (1996); Schneckloth v. Bustamonte, 412 U.S. 218, 226-27 (1973); United States v. Romero, 247 Fed. Appx. 955, 962 (10th Cir. 2007). Here, the government has not satisfied its burden to show that defendant gave consent without implied duress or coercion. The government has offered limited evidence on this point, i.e. Officer Locke did not threaten defendant or promise him anything in return for his consent to search. Even so, a host of factors suggest that defendant gave his consent under implied duress or coercion. Officers initiated the traffic stop with their guns drawn. In addition, a law enforcement helicopter hovered above the area of the traffic stop with a bright light on the area. Without addressing the alleged traffic violation, Officer Locke immediately asked defendant to get out of his car and submit to a Terry pat-down. Officer Locke continued to explore defendant's pocket after he concluded that it did not contain a weapon. After defendant told Officer Locke that the object was a bullet, Officer Locke handcuffed defendant, seized the bullet and searched further in defendant's pockets. No evidence suggests that Officer Locke informed defendant that he was free to leave or that he had a right to refuse to consent to search. United States v. Orrego-Fernandez, 78 F.3d 1497, 1505 (10th Cir. 1996) (failure to inform defendant that he was free to leave or that he could refuse consent are important factors). Officer Locke did not give defendant a written consent to search form before searching the car. Officer Locker also did not administer a Miranda warning before he asked defendant to consent to search. See United States

v. Hernandez-Espolina, 2007 WL 109157, at *4 (N.D. Okla. Jan. 9, 2007) (failure to read Miranda rights, though not dispositive, may be factor to determine whether consent was voluntary). Officer Locke conceded that defendant was in no position to leave and that even though he was not yet under arrest, he was being detained. A reasonable person in defendant's situation would have believed that he was "in custody" and not free to leave. See Berkemer v. McCarty, 468 U.S. 420, 440 (1984) (person "in custody" for Miranda purposes when his freedom of action is curtailed to a degree associated with formal arrest). In these circumstances, the government has not satisfied its burden to show that defendant's consent was free of implied duress or coercion.[6] See Ledesma, 447 F.3d at 1314 (requirement that consent be free of coercion turns on whether reasonable person would believe he was free to leave or to deny officer's request to search).

      B.      Probable Cause

Independent of the bullet which Officer Locke discovered in defendant's pocket, officers did not have probable cause to search defendant's vehicle. Law enforcement officers ordinarily must obtain a warrant, based on probable cause, before conducting a search. See New York v. Belton, 453 U.S. 454, 457 (1981). The Supreme Court has recognized an "automobile exception" which has no exigency requirement. See Pennsylvania v. Labron, 518 U.S. 938, 940 (1996). If a car is readily mobile and officers have probable cause to believe that it contains contraband, the Fourth Amendment permits them to search the vehicle. Id.; see Maryland v. Dyson, 527 U.S. 465, 466-67 (1999). Probable cause to search a vehicle exists if, under the totality of the circumstances, a fair probability exists that the vehicle contains contraband or evidence. See United States v. Bradford,

---

[6] The Court recognizes that defendant did not testify at the suppression hearing. Even so, in circumstances such as here where implied duress or coercion is likely, the government must do more than offer the conclusory testimony of an officer that he did not threaten defendant or promise him anything in exchange for his consent.

-12-

423 F.3d 1149, 1159 (10th Cir. 2005). Probable cause is measured against an objective standard; hence, the subjective belief of an individual officer as to probable cause is not dispositive. United States v. Davis, 197 F.3d 1048, 1051 (10th Cir. 1999).

As explained above, the officers knew that (1) defendant's vehicle matched the description of the vehicle involved in the shooting incident the previous night; and (2) defendant and his brother looked like the two individuals who left in the Ford Mustang the previous night. In addition, officers knew that defendant's brother had an illegal butterfly knife in his possession. These facts are insufficient, however, to establish probable cause to believe that defendant had committed a crime. The officers had probable cause to believe that defendant was a perpetrator, a victim or a witness of a shooting at the gas station, but they could not distinguish between these three possibilities.[7] Because the officers lacked probable cause to search defendant's vehicle and did not obtain defendant's voluntary consent to search the vehicle, the Court sustains defendant's motion to suppress the evidence discovered in the search of the vehicle.[8]

**IT IS THEREFORE ORDERED** that defendant's Motion To Suppress Evidence (Doc. #13) filed November 20, 2009 be and hereby is **SUSTAINED**.

---

[7] Even if Officer Locke had lawfully seized the nine millimeter bullet from defendant, the Court questions whether that fact would have given Officer Locke probable cause to believe that defendant had unlawfully discharged a firearm the previous night. The government did not offer any evidence on how common nine millimeter bullets are in the United States, but a nine millimeter bullet appears to be a widely used cartridge.

[8] Because the government did not prove that defendant's consent was voluntary, the Court need not address whether defendant's consent was tainted by the unlawful seizure of the bullet from his pocket. See United States v. Melendez-Garcia, 28 F.3d 1046, 1054 (10th Cir. 1994) (citing Wong Sun v. United States, 371 U.S. 471, 486 (1963)).

Dated this 12th day of February, 2010, at Kansas City, Kansas.

>s/ Kathryn H. Vratil
>KATHRYN H. VRATIL
>United States District Judge